Witte, it's my understanding that you've reserved three minutes to rebuttal? That's correct, Your Honor. Yes. All right. Well, if you're ready, you may proceed, Mr. Witte. Thank you, Your Honor. May it please the Court, advance Witte for the appellants Lockwood Andrews and Newman, PC, and Lockwood Andrews and Newman, Inc. In this case, the District Court erred in two respects. First, in concluding that more than two-thirds of the class were Michigan citizens, and second, by concluding that the conduct of the Michigan defendant, L.A.N.P.C., constituted a significant basis of the class claims. Turning first to the two-thirds requirement, it is important to note that all of the appellate cases who have considered the issue have determined that the burden of proof rests with the party seeking to invoke one of the CAFA jurisdictional exceptions. CAFA is a broad grant of federal jurisdiction in class action cases, but from CAFA there have been carved out some, as they are known as, exceptions. They are, in fact, abstentions. One, discretionary abstention doctrine, and two, mandatory ones. The reason you would agree that the local controversy exception is not jurisdictional? Yes, Your Honor, it's not, strictly speaking, jurisdictional. It's called an exception in virtually every case to consider it, but it's actually an instance where the District Court is directed by Congress to decline to exercise jurisdiction. Once they already have jurisdiction under CAFA, right? That's correct, Your Honor. Okay. So it is perhaps more accurately described as an abstention doctrine, and as the Court is well aware, in most instances, courts have an unflagging obligation to exercise their jurisdiction unless the elements of abstention are clearly shown. And there's a general presumption against abstention. Also, under the... I'm sorry, I didn't quite hear you. Can you run that by me again? Yes. There's a general presumption against the exercise of an abstention doctrine. Where do you get that? How about... As to jurisdiction, I mean, the federal courts are of limited jurisdiction. Yes, Your Honor. I would say that there may be a presumption against exercising federal jurisdiction, but once you've exercised federal jurisdiction and you have CAFA jurisdiction, as we had here, why do you say that there's a... What did you say? Presumption not to invoke an exception? Yes, Your Honor, and there's really two related reasons why that's true. The first is the Brewer Doctrine, which the Supreme Court has stated that where there is a specific grant of jurisdiction, but then there are exceptions carved out from that. The burden of proof is on the party seeking to invoke the exception rather than on the party who has otherwise fulfilled the obligations of federal jurisdiction. And in this case, there's no question that the primary CAFA elements have been met and jurisdiction would exist but for the exceptions being invoked. The other aspect of the burden is that if this is, as appellants contend, really an abstention doctrine, then... Well, you just told me it was. Yes. And it is, right? And it is. This is Judge Kessler. If I can ask you, Mr. Witte, I mean, this comes from the Quackenbush case, right, that you would say abstention is an extraordinary and narrow exception, as the Supreme Court said, to the duty of a court to... It's strict duty, as the Supreme Court has said, to exercise jurisdiction. Is that where you're getting this proposition from? Yes, Your Honor, and the jurisprudence with respect to, like, Colorado River abstention. I'm aware, of course, that there are some forms of abstention, such as younger abstention, where the burden is placed on the party that is attempting to get into federal court to prove the inadequacy of state law procedures. But in general, a party seeking to say that there is jurisdiction but it should not be exercised has the burden of persuasion. And that's the basis of appellant's arguments here. Now, in this particular case, we believe that the district court's error has three bases. First of all, the district court misconstrued the composition of the class. The class is not limited to Michigan citizens or even to Michigan residents. The plaintiffs have described themselves as residents of Flint, but they do not say that they represent only residents of Flint. The complaint makes a large number of allegations about the various types of damages that may have been endured as a result of the Flint water situation. And it would appear, given a natural reading of the complaint, that it encompasses any individual or entity that would have been harmed through the Flint water situation. And that would include such categories as visitors, temporary residents, non-U.S. citizens, residents who established other domiciles after they were exposed to the water, individual non-citizens of Michigan who own property in Flint, as well as non-natural persons who own property in Flint and were not Michigan citizens. All of those categories would be encompassed in the class, and there is no evidence in the record which would have permitted the court to conclude that the number of those persons was less than one-third of the total number of the people in the class. The lack of a specific class definition in this case makes the matter more difficult for the court because it appears that class membership may be limited to those who can demonstrate an effect to the water to them, so it's hard to say exactly who the members of the class are. But that was a burden on plaintiffs to properly define the class and then to show that two-thirds of the class members were Michigan citizens at the time. Well, if plaintiffs are entitled to a rebuttable presumption that residency is the equivalent of citizenship, how have you rebutted the presumption? Because here you have not come forth with any evidence that I could see to rebut a prima facie showing that residency is citizenship here. Well, it is not. I mean, have you? We have not placed into the record evidence as to the composition of the class. That is correct. Well, okay. If they have sustained their burden of establishing citizenship by the presumption that residency is citizenship, so they have satisfied their burden, then it would shift to you to rebut the burden, and here I don't think you've done it. If that presumption were to be applied, we are not contending that appellants have put forward evidence to rebut such a presumption. It's our position. Sure, but if we accept that there is a rebuttable presumption, you say you have challenged the tie between citizenship and residency here, but all you've done is made a naked challenge. You have not made, in my view, an effective challenge by coming forth with any evidence or really even a need for an evidentiary record. You've just said we are contesting that the residents are citizens. But in Michigan, normally you need an effective challenge to get to a state of evidence and to rebut a rebuttable presumption, and I just don't think you've done it here. Tell me why they shouldn't be allowed to have satisfied their burden through the rebuttable presumption that residency is citizenship here. Well, first, Your Honor, we contest that such a rebuttable presumption exists. Is there any evidence to the contrary in the Sixth Circuit? There's not a single case, counsel, right, in the CAFA context which adopts such a presumption. Is that correct? There's no appellate case that has adopted such a presumption. There are a number of cases, such as the Reese case, which will say things like, while we recognize that residence is prima facie evidence of citizenship, those same cases go on to say that it is not enough just to rest upon an allegation of residence. It's necessary to come forward with evidence beyond just the mere allegation of residence from which the other elements of citizenship can be determined. But aren't those cases go to the jurisdiction of the federal court as opposed to abstention of the federal court? No, Your Honor, those are directly related to the abstention exceptions that we're dealing with now, both the local controversy exception and the home state exception. The Fifth Circuit's analysis in Preston is perhaps the most complete in this regard. It described a number of cases which have used the phrase that residence is prima facie evidence of domicile and thus citizenship, but they say that the Preston case ultimately concluded that these cases don't stand for the proposition that an allegation of residence is sufficient. It said that the advocates in those cases were taking excessive regard for naked statements of law without looking to what those particular underlying cases actually did. And when they looked at those cases, they found that in almost every instance, the courts did not rely upon a mere allegation of residence in the complaint but looked to other evidence in the record to support the finding that the party was actually a citizen of the state. And one of the cases that the Preston court specifically looked at was this court's Fort Knox transit case from 1945. Since that time, every appellate case that has looked at the issue, the Reese case in the Tenth Circuit and Mondragon in the Ninth Circuit and Evans in the Eleventh Circuit, have all concluded that residence itself is insufficient. The Western District of Kentucky in the Albury case looked at this very argument, whether there was a rebuttable presumption, and the court there concluded that if you allowed residence alone to stand for citizenship, then the plaintiff would be able to obtain a remand without carrying their whole burden of proof because, as the court is well aware, domicile requires both residency and an intent to remain. So, excuse me, counsel, when you say that case that they'd be able to get there without needing their whole burden of proof, would you share with me, though, how that statement would really apply to the characteristics of this case and what part of their burden of proof would they excuse from needing? Well, in this instance, of course, they don't even actually plead residence as a basis for class membership, but beyond that hurdle, you'd have to establish beyond residence an intent to remain in the locality, and it's the intent to remain element, which is the second half of the domicile requirement, and basically pleading one element to stand in the place of two elements is essentially excusing the proponent of citizenship within the state from satisfying half of what they need to show citizenship. And the word citizenship is used in CAFA, correct, in this provision? That's correct, Your Honor. It is significant that CAFA used the word citizenship instead of residence in light of the fact that those concepts already had a subtle meaning in law when CAFA was passed in 2005, and presumably Congress would have been aware of that subtle meaning and the distinction between citizenship and residence in framing the CAFA exceptions as it did. Okay. Mr. Woody, you're really out of time, but unless Judges Kethledge and Donald have any more questions on the first issue, I'd like you to move on to the second issue on whether the land PC's conduct was a significant basis for the claim. Yes, Your Honor. First of all, Judges Donald and Kethledge, do you have any more questions on the first issue? No, it's okay, Judge Griffith. Okay, can you move on quickly to the second issue, because then we'll hear from the plaintiffs. Yes, Your Honor, and I can do it very quickly. The basic problem is that the complaint does not provide a basis for determining the significance of L.A.N.P.C.'s action in relationship to that of the other defendants, particularly L.A.N. Inc., and it's impossible to determine from the complaint that L.A.N.P.C.'s actions were significant as compared to the other ones, and as the case law has indicated, significant, given its ordinary meaning, requires you to compare the importance of that defendant to the actions of the other defendants in the case. So counsel, if L.A.N. Inc., though, conducts business through L.A.N.P.C., don't we rightly assume, can't we rightly assume that L.A.N.P.C. has the same responsibility for the conduct as L.A.N. Inc.? Well, Your Honor, if it's just a matter of responsibility for the, or liability for what has occurred, that wouldn't be enough. The statute specifically says that it has to be conduct- or action-related. So where a defendant, for example, that's only vicariously liable but didn't actually do any affirmative acts would not be regarded as a significant defendant under the case. So that's one problem, but the second problem is that the phrase through L.A.N.P.C. doesn't really tell us anything as to what that conduct actually was. It could be merely that L.A.N. Inc. was employing L.A.N.P.C.'s license and that L.A.N.P.C. was completely passive in the overall operations which led to the liability and if so, they would not be a significant defendant for purposes. So that would be a question that one would have to get more factual information to determine whether or not L.A.N. Inc. was actually conducting its affairs and actually conducting acts through the L.A.N.P.C. if I got that right, okay? Yes, Your Honor, you would need to know more than the complaint tells you. Okay. And since that's the only evidence that we have in the record, then the plaintiffs at least have not met their burden of showing that L.A.N.P.C. was a significant defendant for purposes of the exception. Mr. Woody, this is Judge Kethledge. I'd like to ask you a question about that last point. As you probably know, some of the cases, the Catholic cases, say that we should make the abstention determination based on the facts set forth in the complaint and some actually, with respect to this significant basis requirement, they say we look to the facts alleged in the complaint, which is the act kappa this exception itself uses the word alleged. So do you have a position as to whether in determining whether the alleged conduct here was a significant basis of the plaintiff's claims, we should look at the complaint, sort of like the well-completed complaint rule kind of analysis, or do you think we should look beyond the complaint? It's our position, Your Honor, that it is permissible to look at evidence beyond the complaint in making the determination. I think it's a very close call because textually, of course, it says whether the alleged conduct is a significant basis, and that's what's led the Ninth Circuit and some of the courts to conclude you look at the complaint alone. But in our view, in every other instance where the jurisdiction of the court is at issue, then the court can look to extraneous evidence beyond the complaint, if any is presented, to determine a jurisdictional question that's in dispute. Okay. Thank you. Any further questions, judges, on the second point? Not for me. Okay. If not, Mr. Witte, you'll have your three minutes for both. Thank you, Your Honor. All right. Mr. McAlpine? Yes. Are you there? Yes. All right. You may proceed. Very good. Mark McAlpine on behalf of the Mason Punitive Class Plaintiffs. Just a couple points on this issue of the local controversy exception. We think that the complaint adequately describes the class as one which includes property owners in the Flint area affected by the Flint water crisis and those who were injured as residents and who consumed this water over almost a year's period of time. So I would turn to Mr. McAlpine, if I may, just on that very point. Your complaint's a bit vague as to whether the class includes people who were residents at the time. And then as a separate group, an additional group, people who own property there or entities that own property, or whether it's limited to residents who owned property. Do you have a clarification on that point? Well, as a matter of fact, once the case was remanded to state court, we filed a second amended complaint which clarifies the class definition. We have to go on the first complaint here is my understanding of the case law. And my question goes to the first complaint. The provision that says it's residents of Flint and property owners. Are those two groups you're capturing or is property owners limiting the residents that are members of your class? No, it is two groups. Those who have a residency as well as those who are property owners. In a very large percentage of the case, it's both, but it's plotted as two groups. Okay, thank you for that. I appreciate it. And to finish that point, certainly it is our view that the class definition, and I think many cases have looked to the class definition to determine whether or not residency is a sufficient allegation to equate or raise the presumption of citizenship. We don't even have a class. We don't have a class definition in this complaint. I mean, we've got fragments of language about the plaintiffs and what they are and residents and so on. But unlike most class action complaints, there's no definition here. What paragraph sets forth the definition if I'm overlooking it? Let me pull up the complaint, but it's specifically alleged that the injuries were due to residents and property owners. So is that the definition? I mean, normally we have a definition, you know, as opposed to sort of scattered language that we would then piece together inferentially a definition. I'm looking specifically to paragraphs 26 and 27 of the first complaint and the definition of the class who are those who are exposed to these particular issues as a result of their residency and or ownership of property. Let me find the right... Okay, well, I mean, so you've identified the paragraph so we can zero in on those. Yes, I would also refer the court to paragraph 1 insofar as it identifies the primary group as those who are residents or who own property. So paragraph 1 and then throughout the class allegations starting with paragraph 26. There's a number of the case... I don't know if I'm... Rick, were you talking? Did you want to ask a question? No, go ahead. Okay, sorry. A number of the cases that deal with the exact same issue we're dealing with, whether an allegation of residency is enough to show two-thirds citizenship, a number of those cases have observed that you can avoid this problem altogether simply by defining your class to be comprised of residents of the state in which the controversy exists. Is there a particular reason why the complaint didn't simply say that? Well, we certainly took that into consideration. I understand the court's view on the second amended complaint. There has been at least one court that specifically allowed consideration of a clarification of a class definition in an amended complaint that was filed. Which case is that? That was... That's the Benko Quality Loan 9th Circuit 2015 case. Okay, thank you. And like that case, as this happens in many of these class actions, as we've continued to learn more about the contours of the case, we've been able to further refine the allegations, hence the second amended complaint. And that really does raise a point we wanted to stress here, is that we are very early in the development of these cases. And so more information becomes known, amendments are made to clarify. The particular clarification here specifically alleged that the class members are residents and citizens of Flint, keeping in mind that class certification in a case like this is quite a ways off and is a determination that will be made after discovery is exchanged on both sides, which is why we think... Okay, there's a very strong rule in federal court, though, that jurisdiction, whether a federal court has jurisdiction and also whether it's going to exercise it, that's determined at the outset. I mean, we don't determine jurisdictional issues at the certification stage. And so if this stuff is not in the complaint, then the general rule is that we don't have jurisdiction or that we don't exercise it. I appreciate that. I do believe that there's a sufficient allegation of residency and property ownership in the original complaint, and it is simply elaborated on further in the amended complaint. So I understand the court's concern about this precise language that was used, but I think a fair reading of the complaint, as did the trial court, is that we are limiting the class by definition to residents and owners of property  And with that definition, we think we move quickly to the presumption that I think is well recognized that residency... Okay, go ahead. I'm sorry, go ahead. Okay, I'm making the point that the presumption of residency or citizenship from residency I think is well established and certainly applies here. Well, it's not well established in this context. So, I mean, would you agree... We're not going to make decisions or not make decisions based simply on what other circuits do. I'll say that up front. But would you agree that if we were to apply the presumption that you're advocating, that we would create a clear split with three other circuits who have refused to do that? I wouldn't in this respect. I think this is a highly case-specific determination. And in each of the cases where a court has declined to apply the presumption, there was some indicia in the record that allowed the court to be concerned about the quality of any presumption. In other words, in that one case... Okay, I understand what you're saying. In the Seventh Circuit case, they had better information than we have here. I mean, you had people who had gotten cell service from a provider. They had Kansas phone numbers, and they got their bill at Kansas mailing addresses. And the Seventh Circuit said that's not good enough. I mean, that's a lot more than we have here, isn't it? Actually, it's a different situation altogether. There you don't have the underlying indicia of reliability. You've got cities that are across state borders that there's no necessary connection between having a cell number or having a billing address and citizenship. Here we've got actual residency as alleged, not simply the billing arrangement, if you will, or some other concern that raises a question about the quality of the inference that the definition of residency and or property ownership is enough to cause the court to have some reliable belief that, more likely than not, the vast majority of the plaintiffs, the punitive plaintiff class, are made up of citizens of the state. So that case, I think, is distinguishable, and many of these other cases are as well. Most courts have retreated to the definition of the class to address the concern and or raise the concern. For instance, there's a case where we've got an 85-year-old time period for a class. That raises the indicia of unreliability because the court can, on its own, infer that people may or may not have moved from or to the state. Here we have a very tight definition of the class, very localized, very temporally limited, and on its face a reliable indicia of citizenship. As opposed to some of the other cases that found reasons to have concern. Preston is another example. I understand your argument. One can read the cases and draw a conclusion, but I understand your argument. And I would simply move off the point by saying, even in a case like Reese with the Tenth Circuit, even cases that have ruled against it have stated in them, like Reese, that it is appropriate in certain cases to make an inference of citizenship from the way the class is defined as is alleged in the complaint. And I think when you roll those factors together, what we have in this case is an allegation of residency and home ownership that is in and of itself reliable, with no indicia of concern that we saw in other cases that have not applied the presumption. Cases that have applied the presumption have found it somewhat reasonable and an indicia of reliability in the facts as applied in the complaint, which is what we think we've got here. It certainly is clear that we would be the first circuit so far, contrary to three others, to find a presumption of citizenship in the CAFA context based on an allegation of residence. I believe the Hollinger Fifth Circuit decision provided for the application of the presumption. Certainly district court decisions, the Eagle Nest and Caruso have applied it. The only time it hasn't been applied is, as I said, where there is some other indicia of unreliability, like in Preston or Reese, where there's something in the factual record or the allegations that would cause the court to say, wait a minute, the allegation of residency is not sufficient in the facts of the case. That would mean the presumption would be rebutted if it were applied, but they just don't apply it. Well, actually, each of those cases involved decisions by a court making a discretionary decision whether to apply an indicia of unreliability or to make the decision that further evidence beyond the allegation is not enough. It comes down to the discretion of the trial court looking at the allegations of the complaint and the factual pattern of the case as a whole. And it's only when the courts have gone and looked at the factual allegations as a whole and find an indicia of unreliability have they neglected to apply the presumption. We don't have that here. There's nothing in this case that would suggest any indicia of unreliability, especially the way the class is defined both narrowly to be residents and homeowners and by time and nature of injury. It's property owners, right? It's the allegation, not homeowners. Property owners, I'm sorry. Property owners. Okay. And keep in mind, and this is, you know, other courts have looked at these kinds of issues. These are people who have lived in the area long enough to have consumed this water over a prolonged period of time, which is another indicia of reliability as it modifies resident and or property owner. But the point I guess is I don't mean to, you know, contest everything you're saying, but I read the complaint to include anyone who had any exposure to the water during the relevant time, not throughout the time. Is that accurate? Well, if you read the complaint, it speaks in terms of the damage caused by prolonged exposure to lead in the water and specifically identifies individuals who had that exposure. It says have experienced. So, I mean, this is a yes or no question. Does the person have to have experienced this all the way from April 25, 2014, to the present, or is it at any time during that period that brings them into the class? Well, it would be any time during that period where they have consumed sufficient quantities to have exposure to the problem with lead. Someone walking through the community and stopping at a restaurant isn't going to have the lead poisoning that's been alleged in the complaint. We're talking about children and adults who have consumed over a period of time. Certainly, I have to concede that the class could pick up somebody that's moving through the area. We're not required to show that 100% of the class members are citizens of the state of Michigan, just two-thirds. And in this particular case, it's pretty clear that you'd really have to be a resident there and have consumed this water for a prolonged period of time to have the kind of damages that are being alleged as definitive of the class. Any other questions, Judge Donald, on the first issue? No. Judge Kessler, do you have any further questions on the first issue? I do not, thank you. Okay, could you move briefly to the second issue of whether the conduct of LANPC was a significant basis for the claims? Yes, I think, again, back to the complaint, it's clearly alleged that LANPC, the Michigan company, actually performed the licensing that was required to get the permit for the operation of the plant. The state statutes require a Michigan-licensed professional engineer to sign and seal the plans and specifications, and that's what LANPC did. Where is that alleged, Mr. McAlpine? Where is that in the complaint?  It was certainly, their role was specified both in terms of the placing the water treatment plant into operation and the prior studies that LAN did in preparation to undertake the design of the facility. I'm just not seeing that anywhere in the complaint that was operative at the time of removal. I mean, can you specify a paragraph number that you're talking about here? Yes, I am. You would be looking to part one under the professional negligence claim. Okay. Is there a page or a paragraph number you can help us out with here? Page 30, and you'd be looking at paragraph 160. Okay, so we're not talking about the complaint that was operative at the time of removal. We're talking about a different complaint? No, we're talking about the original complaint that was in effect at the time the judge made its ruling. Okay, I guess I don't have that document in front of me, but can you read what you're looking at? Well, it's across several paragraphs, but it's alleged specifically, and I apologize that I'm fumbling a little bit. It's hard on the phone. My understanding was that the first amended class action complaint that you filed in the Genesee County Circuit Court was the complaint that was operative at the time of removal. Is that accurate? Yes, this is the second one. Okay, that one doesn't have what you're talking about. Anyway, I don't want to bog it down. I'll just cut to the chase on my concern on this issue, Mr. McAlpine. You would agree that it's your burden to show that the substantial basis requirement for this exception is met, correct? I agree. And it seems to me that the complaint, at least the one I'm looking at, nowhere describes the nature of the services that LANPC provided. It says only that the other company provides services, quote, through LANPC, which seems very ambiguous. And that's it. And moreover, the district court did not even make a finding on this point. And so I guess, I mean, my question is, doesn't it take more than that to show that this requirement is met and that we would therefore not follow our strict duty to exercise jurisdiction? Well, I would take a little exception with that. I do believe that I'm looking at the professional negligence allegation in the First Amendment complaint that is in play here. And it specifically alleges that LAN had an obligation to properly place the facility in operation. I understand. But it doesn't say LANPC. I mean, it's your burden to show it's the Michigan entity, not the Texas one, and you define them collectively and then just talk about it collectively. And why shouldn't just say, you know, a reference to the LAN defendants, why shouldn't that fail as a basis for us to abandon our strict duty to exercise jurisdiction? Well, I think a number of the courts addressing the issue have looked at it in terms of whether or not the complaint alleges that each one of the individual defendants are fully responsible for the entire range of actions and damages claimed. And here, all of the allegations that are made of wrongdoing are directed at LANPC and LAN, Inc. acting through LANPC. And I think that's what the trial court focused on in saying that, in fact, LANPC was a significant defendant because every claim in the case is directed at LANPC. I thought that the statute says that the local defendant has to be one whose alleged conduct, the conduct of that local defendant is the basis, as opposed to being only vicariously responsible for an out-of-state entity's conduct. Is that a fair reading in the statute? I think it's a fair reading. We have just the opposite here. The LAN, Inc. defendants are alleged to be vicariously liable for LANPC as the actor responsible for having the overall responsibility of administering the placement of this treatment plant into operation. So all of the allegations are directed at LANPC. It just doesn't say in the complaint that LANPC has that responsibility as opposed to some other LAN. We're not seeming to clear that up here, I guess. Number one, as I said before, I understand the position, but the second amended complaint does make more specific allegations. But it really comes down to the fact that LAN was responsible for placing the facility into full-time operation. And that's an allegation made against each one of the defendants. And therefore, I think on the test of various courts, it's considered that each of the defendants become a significant defendant. But under the facts here, and if you read the background sections of the complaint, it is specified what the individual LAN defendants were undertaking. Specifically, again, in paragraph three of the complaint, it's alleged that LANPC specifically was retained to conduct studies and reports for the new water supply that were being developed for fluid connection replacing that facility into operation. And I read that to mean LAN, Inc. is the one who's doing all that. Well, it doesn't say LAN, Inc. It says LANPC. Okay, well, I don't want to argue with you about it. I mean, I read the complaint pretty straightforward to say that LAN, Inc. is doing the work there. Yes, in that same paragraph going on, it says, upon further information and belief, the vast majority of the services provided by LANPC, which is the allegation I'm focused on. It says the vast majority of the services were, in fact, provided by LANPC. No, it does not say that. Plainly, it does not say that. It says the vast majority of the services provided by LAN were conducted at a different location. It doesn't say that most of the services were done by LAN. It says whatever LANPC did was done elsewhere, which is really neither here nor there. It doesn't tell us anything about their conduct relative to LAN, Inc. Well, there's a number of different ways to look at it, I suppose. But I believe if you read the complaint as a whole, the allegation is made that LAN, Inc. is effectively the same as or the alter ego of LANPC. But in the first instance, it's alleged that LANPC, that company, is what's responsible, was responsible for undertaking the acts of placing the plant into operation. The fact that LAN, Inc. had some hand in how that was done makes them vicariously liable, perhaps. But we're alleging that LANPC was the primary actor. And I think that's all that is required here. That, with the fact that all of the claims that are made are wrongdoing, are fully directed at LANPC. They're also directed at LAN, Inc., in its position as a vicariously liable party, and LeRoy Daly in the same regard. But I don't think there's any way you can read the complaint as a whole and not conclude that the allegations against LANPC are all of the allegations of wrongdoing in the case. And I think that's been sufficient by the vast majority of courts that have considered the issue. Well, okay, I guess we'll look at that. Thank you, Mr. McAlpine. Any further questions on this point, Judge Donald? No. No, thank you. I'll give you maybe 30 seconds to wrap it up, Mr. McAlpine. Well, I think just in closing, the thing to be considered here, and this doesn't show up anywhere on the record, there are a number of cases that are proceeding in state court, one by opt-out plaintiffs which can't be removed. The people of the state of Michigan have filed suit. These are all cases that are directed only against the engineering firms, which is true for the Mason case as well. I just don't want the court to lose sight of the fact that Judge O'Meara has remanded the majority of these cases to the state court. What's going to happen now is those cases are going to proceed. There's an underlying efficiency here and prejudice to the class. If this class can't satisfy the local controversy exception, that means that one whole raft of cases will go forward in the state court and another raft of cases involving the same defendants would go forward in federal court. That obviously is something that the local controversy exception was intended to avoid. I think Judge O'Meara pointed this out in his opinion as a relevant factor. Thank you very much. Mr. Whitty, you've got three minutes to rebuttal. Yes, Your Honor, and I would just ask if the court has any questions. That would seem to be a good use of my time. Well, I've got a question. In your notice of removal to federal court, you relied upon, I think, paragraph two of plaintiff's complaint to allege that the plaintiffs were citizens of the state of Michigan. Since you allege that in your removal notice, are you not stopped to take a contrary position on this remand motion? Your Honor, our notice of removal stated that one or more of the plaintiffs, the named plaintiffs, were citizens of Michigan. Of course, one or more of the defendants is not. That's all that's necessary for it. You based that on the allegation of residency, did you not? So you equated the allegation of residency to decitizenship there when you removed it to federal court. I just wonder if you're stopped now to change your position. No, the record contains no indication of what the basis was for that allegation. It was just one that's been accepted. Was it your allegation that they were citizens of Michigan to establish the diversity under CAF? Yes, Your Honor. I believe that given the fact that all of these, and these particular plaintiffs did allege that they were residents of Flint, so at least that hurdle was crossed over. And the assumption was of the eight of them that one of them, at least, was intended to remain in the state. If that was not true, then the plaintiffs obviously would have, not desiring to stay in federal court, have said, no, we are all residents of some non-diverse state or something like that. But apparently one or more of them are, in fact, citizens of Michigan. All right. So you don't think there's an estoppel problem here? No, Your Honor. Okay. I have to say, whose phone has been ringing for the last 15 minutes? I'm sorry. It's driving me crazy. And I have to say, it's not mine, Your Honor. No. It's not mine. It's not mine either. It's certainly not mine. I have no idea either, because it's not coming from the courtroom. We're going to get the FBI on this. I can confess that it was my dogs barking. I was thinking the only thing we're missing are police sirens. But it was also business related, because UPS was delivering more work here to my home, so my two little dachshunds had to attack the UPS thing. So anyway, I do apologize for that. We're having a thunderstorm here, so there may have been some extraneous noise from that as well. All right. I don't have any further questions, Mr. Witte. Judge Donald, Judge Karplitz, do you have any questions? Thank you. We recognize that the 60-day clock is ticking on this case, and I will assure you that we will get a decision out to you promptly, and we will actually be conferring on the case right after you hang up, and we will do our best to give you a good, prompt decision on this matter. So with that, we will conclude the arguments today, and you may hang up. Victoria? Yes, sir? Can you confirm for me when the attorneys have disconnected? Yes, sir. They both disconnected. Okay. Ray and Bernice? So hold on just a second, Judge Griffin. Can you go ahead and place them in a separate sub-conference, and we'll disconnect from the court, Victoria? You want to place the judges in a sub-conference? All right. We'll just hang up then, so they'll be fine. Judge Griffin, do you have any other questions for me? You want me to hang up? No, no. The three judges will stay on the line, and we'll hang up from the courtroom. Okay. When we're done with the conference, we just hang up then? Correct. Yes. Okay. We'll do it. All right. Thank you. Thank you so much, Lance. Thank you. Bye-bye. Thanks, Lance. Okay. Bernice, Ray? Bye-bye.